IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| GORDON C. REID, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. CIV-12-1416-M |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Defendant. ) | |

## REPORT AND RECOMMENDATION

After re-referral of this matter, the undersigned gave Plaintiff the opportunity to file an amended complaint. Docs. 84, 89. Plaintiff did so, suing the United States pursuant to the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671. Doc. 94, at 1. Defendant United States moved to dismiss under Fed. R. Civ. P. 12(b)(1). Doc. 97. Defendant maintains "it is immune from liability pursuant to the discretionary function to the Federal Tort Claims Act [FTCA]." *Id.* at 1. The undersigned recommends that the action be dismissed with prejudice for lack of subject-matter jurisdiction.

**I.    Background.**

Defendant United States filed its motion to dismiss on May 24, 2016. *Id.* On July 1, 2016, weeks after his response time lapsed, Plaintiff filed two motions for orders (one to convert the motion to dismiss to a motion for summary judgment and the other to defer the motion to dismiss). Docs. 98,

100. He also filed a third motion in the alternative, should the court deny the other two motions, seeking an extension of time to respond to the motion to dismiss. Doc. 99. On October 13, 2016, after the United States responded, Docs. 104, 105, this Court denied Plaintiff's two motions for orders, Docs. 98, 100, and granted his motion for an extension of time, giving him until November 2, 2016, to respond to the United States' motion to dismiss. Docs. 108, 99. After that date passed, on November 4, 2016, Plaintiff objected to this Court's October 13, 2016 order. Doc. 110. On December 8, 2016, this Court overruled Plaintiff's objections. Doc. 111. That same day, the undersigned sua sponte gave Plaintiff an additional twenty days, until December 28, 2016, to respond to the United States' motion to dismiss. Doc. 112. After that date had passed, on January 12, 2017, Plaintiff sought yet another extension of time to respond, Doc. 114, which this Court granted, giving Plaintiff until January 31, 2017 to respond. Doc. 115. To date, Plaintiff has not responded.

## II. Standard of Review.

The court liberally construes a pro se litigant's complaint. *Gaines v. Stenseng*, 292 F.3d 1222, 1224 (10th Cir. 2002). Pro se parties must still "follow the same rules of procedure that govern other litigants." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (internal quotations and citation omitted). And, although the court "liberally construe[s]

pro se filings," the court does not "assume the role of advocate." *Yang v. Archuleta*, 525 F.3d 925, 927 n.1 (10th Cir. 2008).

A. **Facial attack.**

> Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.

*Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995) (explaining the distinction between "facial" and "factual" attacks on subject-matter jurisdiction) (internal citations omitted). Under these circumstances, the court presumes that the factual allegations in Plaintiff's amended complaint are true. *Id.* at 1002.

B. **Factual attack.**

Here, Defendant challenges the facts upon which subject-matter jurisdiction depends. Doc. 97, at 4-14. Under this "factual attack," the court "may not presume the truthfulness of the [amended] complaint's factual allegations." *Holt*, 46 F.3d at 1003. Instead, the court "must make its own findings of fact." *Castro v. Kondaur Capital Corp.*, 541 F. App'x 833, 836 (10th Cir. 2013) (citations omitted). In doing so, the court retains "wide discretion" to rely on materials outside the pleadings, and the "court's reference to evidence outside the pleadings does not convert the motion [to dismiss] to a

3

Rule 56 motion [for summary judgment]." *Holt*, 46 F.3d at 1003; *see also Castro*, 541 F. App'x at 836.

Plaintiff must establish this Court has jurisdiction. *See Hobby Lobby Stores v. Sebelius*, 723 F.3d 1114, 1184-85 (10th Cir. 2013) (en banc) ("As the party invoking federal jurisdiction, [Plaintiff] bears the burden of establishing [his] standing.") (internal quotes, brackets, and citation omitted). So, once Defendant factually attacks jurisdiction under Rule 12(b)(1), Plaintiff must "present affidavits or other evidence sufficient to establish the court's subject matter jurisdiction by a preponderance of the evidence." *Robinson v. Union Pac. R.R.*, 245 F.3d 1188, 1191 (10th Cir. 2001); *see also Hobby Lobby Stores*, 723 F.3d at 1185 (noting that plaintiff must establish standing "in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation"). Should it appear this Court lacks jurisdiction of the subject matter, the court shall dismiss the action. Fed. R. Civ. P. 12(h)(3).

## III. Analysis.

Plaintiff has not responded to the United States' motion to dismiss, despite repeated extensions providing him ample time to do so. This Court's local rules mandate that "[a]ny motion that is not opposed within 21 days may, in the discretion of the court, be deemed confessed." LCvR7.1(g); s*ee Fournerat*

4

*v. Wisc. L. Rev.*, 420 F. App'x 816, 819 (10th Cir. 2011) ("The district court granted these defendants' motions to dismiss and deemed them to be confessed because Mr. Fournerat failed to respond to the motions. *See* W.D. Okla. Local R. 7.1(g)."). Circuit law mandates that "even if a plaintiff does not file a response to a motion to dismiss for failure to state a claim, the district court must still examine the allegations in the plaintiff's complaint and determine whether the plaintiff has stated a claim upon which relief can be granted." *Issa v. Comp USA*, 354 F.3d 1174, 1178 (10th Cir. 2003); *Puskaric v. Patton*, No. CIV-15-0991-HE, 2016 WL 4916845, at *4 (W.D. Okla. Sept. 14, 2016) (unpublished order adopting unpublished report and recommendation) (applying *Issa* and reviewing allegations where defendant filed a motion to dismiss under Fed. R. Civ. P. 12(b)(1)). Plaintiff's failure to respond means he has not "present[ed] affidavits or other evidence sufficient to establish the court's subject matter jurisdiction by a preponderance of the evidence." *Robinson*, 245 F.3d at 1191.

### A. Plaintiff's contentions.

Plaintiff alleges that he was twice attacked by fellow federal detainee John Doe while at the Federal Transfer Center in Oklahoma. Doc. 94, at 4-5, 8. In his amended complaint, Plaintiff alleges that on February 4, 2008, while housed at the Essex County Correctional

5

Facility, another federal detainee attacked him "from behind hitting him several times in the head and torso." *Id*. at 4-5.

He claims he was soon transferred to the Metropolitan Detention Center in Brooklyn, New York. *Id.* at 5. He alleges that authorities there explained that he and John Doe were "separatees," "mean[ing] he and John Doe would be housed separately." *Id.* He alleges that on April 21, 2008, the U.S. [Marshals Service] transported Plaintiff . . . to the Federal Transfer Center in Oklahoma (FTC Oklahoma) . . . by airplane . . . . [and,] unbeknownst to Plaintiff, the USMS and the Bureau [of Prisons] . . . also placed John Doe on the same flight." *Id.* "Shortly after disembarking at FTC Oklahoma, Plaintiff was again attacked, assaulted and battered by John Doe." *Id.*

Plaintiff maintains that after this incident, he was "tagged by placement of a white plastic cuff." *Id.* He alleges an official from FTC Oklahoma informed him this would indicate he was a separatee from "whoever else that may be similarly adorned . . . ." *Id.* at 6. He alleges that while on a flight to Knoxville, John Doe, who was also on board, was "similarly adorned . . . and seated toward the opposite end of the plane." *Id.* Plaintiff maintains that after landing and during intake at USP

McCreary, officials kept the two separate. *Id.* He alleges that during intake the "interviewer" told him "he and John Doe had been placed on separatee status" and that one of them would be transferred from USP McCreary. *Id.* at 6-7. He alleges that John Doe was later transferred. *Id.* at 7.

Plaintiff maintains that officials "failed to forward to reviewing authority complete information regarding [his] classification [as a separatee]." *Id.* Plaintiff was transferred to Terre Haute, Indiana in 2008. *Id.* at 8. On September 22, 2010, authorities placed him on a USMS plane headed to FTC Oklahoma. *Id.* He alleges John Doe was also on the plane. *Id.* Shortly after disembarking, "Plaintiff was brutally assaulted and battered by John Doe who repeatedly struck Plaintiff about the head and torso." *Id.*

Plaintiff claims Defendant failed "to keep him safe and free from harm pursuant to 18 U.S.C. §§ 4042 & 4086" (duties of BOP and temporary safekeeping of federal offenders by U.S. Marshals) and seeks compensatory damages of $8,000.00, plus interest, double and treble damages, costs and fees. *Id.* at 9. He invokes federal jurisdiction under 28 U.S.C. §§ 2671-80 and 1346(b). *Id.* at 1.

## B. FTCA Discretionary Function.

Defendant contends this court lacks jurisdiction because the discretionary function of the FTCA bars Plaintiff's claims. Doc. 97, at 5-14.

### 1. The applicable law.

Under the FTCA, the United States waives sovereign immunity and can be held liable for certain wrongful acts or omissions of a federal employee under circumstances in which a private person would be liable to a plaintiff according to the law of place where the act or omission occurred. 28 U.S.C. § 1346(b). However, under 28 U.S.C. § 2680(a), the United States retains sovereign immunity from liability for torts committed by its employees in the exercise of discretionary functions. Under this provision, the United States cannot be held liable for any damages resulting from its employees' acts or omissions unless a federal statute, regulation, or policy mandates a course of action and the employee fails to follow that mandated course of action. *Berkovitz v. United States*, 486 U.S. 531, 536 (1988). This exception serves to "prevent judicial second guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of

an action in tort." *Id.* at 536-37 (quoting *United States v. Varig Airlines*, 467 U.S. 797, 814 (1984)) (internal quotations omitted).

The court applies a two-pronged test to determine if the discretionary function exception applies: (1) whether the act involves an element of judgment or choice, and (2) whether there might have been some sort of policy judgment underlying that act. *Id.* at 536. Both prongs must be met for the exception to apply. *Id.*

The first prong is met if the court determines there was not a federal statute, regulation, or policy in place that specifically mandated a particular course of action. *Id.* If the first prong is met, the court considers whether "that judgment is of the kind that the discretionary function exception was designed to shield." *United States v. Gaubert*, 499 U.S. 315, 322-23 (1991). If the judgment might be based on policy considerations, then the second prong is met. *Sydnes v. United States*, 523 F.3d 1179, 1185 (10th Cir. 2008).

With respect to the first prong, i.e., determining whether a statute, regulation or policy allows for discretion, courts have broadly constructed such provisions. *See, e.g.*, *Cohen v. United States*, 151 F.3d 1338, 1343 (11th Cir. 1998). In the Tenth Circuit, words such as "reasonable belief"

and "when necessary," give government employees discretion. *Flynn v. United States*, 902 F.2d 1524, 1531 (10th Cir. 1990). So, for this Court to find that the regulation is not discretionary, there must be some "fixed standard" for government employees to follow. *Id.*

Similarly, in determining whether the second prong is met, the Tenth Circuit has applied an expansive view of the policy considerations underlying the discretionary decisions. *Sydnes*, 523 F.3d at 1185. Particularly, in the prison context, Supreme Court precedent cautions courts to afford prison officials deference in reviewing their decisions: "The operation of a correctional institution is at best an extraordinarily difficult undertaking," *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974), and "courts are ill equipped to deal with the increasingly urgent problems of prison administration and reform," *Procunier v. Martinez*, 416 U.S. 396, 405 (1974), *overruled on other grounds by Thornburgh v. Abbott*, 490 U.S. 401 (1989). Thus, "a prison's internal security is peculiarly a matter normally left to the discretion of prison administrators." *Rhodes v. Chapman*, 452 U.S. 337, 349 n.14 (1981). Decisions by prison officials are generally "of the kind that the discretionary function exception was designed to shield." *Gaubert*, 499 U.S. at 322-23.

Under 18 U.S.C. § 4042, the BOP "shall . . . provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States." 18 U.S.C. § 4042(a)(2); *see also id.* § 4042(a)(3) (stating BOP "shall . . . provide for the protection . . . of all persons charged with or convicted of offenses against the United States"). Despite the use of the word "shall," courts have consistently concluded that § 4042 involves an element of judgment or choice, rather than prescribing a course of action for a government employee to follow. *See, e.g., Cohen*, 151 F.3d at 1342-43 ("[E]ven if § 4042 imposes on the BOP a general duty of care to safeguard prisoners, the BOP retains sufficient discretion in the means it may use to fulfill that duty to trigger the discretionary function exception."); *Calderon v. United States*, 123 F.3d 947, 950 (7th Cir. 1997) ("While it is true that this statute sets forth a mandatory duty of care, it does not . . . direct the manner by which the BOP must fulfill this duty. The statute sets forth no particular conduct the BOP personnel should engage in or avoid while attempting to fulfill their duty to protect inmates.").

## 2. Application of the law.

Plaintiff argues there are additional regulations and policies that take away the prison staff's discretion when prison staff are notified of safety concerns requiring the separation of inmates. Doc. 94, at 7. First, Plaintiff points to the federal regulation governing Central Inmate Monitoring (CIM) assignments, 28 C.F.R. § 524.70, which characterizes certain inmates as separatees or members of a "Disruptive group" and security threat groups. *See* 28 C.F.R. § 524.72(b), (d); *see* 28 C.F.R. § 524.73 (Classification Procedures). Inmates labeled as separatees "may not be confined in the same institution (unless the institution has the ability to prevent any physical contact between the separatees) with other specified individuals who are presently housed in federal custody or who may come into federal custody in the future." 28 C.F.R. 524.72(f); *see also* BOP Program Statement §§ 5180.05.7.b; 5180.05.7.d; 5180.05.7.f;[1] Doc. 94, at 7. When classifying an individual as a separatee, the BOP is directed to consider factors, which include but are not limited to "testimony provided by or about an individual . . ., and whether the

---

[1] This Court may take judicial notice of the BOP's program statement. *United States v. Tidzump*, 841 F.3d 844, 845 (10th Cir. 2016).

inmate has exhibited aggressive or intimidating behavior towards other specific individuals, either in the community or within the institution." 28 C.F.R. 524.72(f); BOP Program Statement § 5180.05.7.f.

The United States argues that at the time of the alleged September 2010 incident, Plaintiff and John Doe were not assigned as separatees in the CIM system. *See* Doc. 97, Ex. 5, at 2 (Decl. of Charles Gibson) ("There is no indication within either inmate's central files they were ever listed as separatees from one another by [CIM] prior to September 22, 2010 . . . ."); *id.* Ex. 1, at 1 (April 22, 2008 Report Incident for Plaintiff: CIMS Category "None."); *see id.* Ex. 1, at 4 (After the April 22, 2008 incident, "both inmates were . . . escorted to the Special Housing Unit without further incident."); *see also id.* Ex. 2. Plaintiff did not fall into a category of automatic classification. 28 C.F.R. § 524.73(a) ("Except as provided for in paragraphs (a)(1) through (4) . . ., an inmate . . . may be classified as a CIM case at any time by a Community Corrections Manager or by appropriate staff at the Central Office, Regional Office, or institution."). Also, Defendant challenges Plaintiff's allegation he was told he was classified as a separatee from John Doe. The regulations require a written notification of such status to the separatee but preclude

13

identification of those from whom he must be kept separate. Doc. 97, at 13 (quoting 28 C.F.R. 524.73(b)). And there is no evidence Plaintiff "informed staff at FTC Oklahoma that [John Doe] posed a threat to his safety prior to the 2010 assault . . . ." Doc. 97, Ex. 5, at 2.

Other regulations governing the protection of inmates are explicitly discretionary in nature. *See* 28 C.F.R. § 541.22(a) (setting forth that the warden may place an inmate in administrative detention or delegate the authority to do so); 28 C.F.R. § 541.23 (setting out situations that may be considered protection cases). So, if a separation order were in effect, Plaintiff "'would be able to escape the force of the' FTCA discretionary function exception." A*shford v. United States*, 463 F. App'x 387, 394 (5th Cir. 2012) (quoting *Parrott v. United States*, 536 F.3d 629, 638 (7th Cir. 2008)). "The 'existence (or absence) of a formal separation order is of central importance.'" *Id.* (quoting *Parrott*, 536 F.3d at 638) (brackets omitted). Plaintiff has presented no evidence to rebut Defendant's affidavit and prison incident report indicating no separation order existed involving Plaintiff and John Doe. *See also Robinson*, 245 F.3d at 1191.

The United States maintains the decision how to best protect inmates is left to the discretion of BOP officials. Section 524.72(f) mentions non-exhaustive factors for BOP officials to consider in deciding whether to classify an individual to a separation assignment. "[W]hether the inmate has exhibited aggressive or intimidating behavior towards other specific individuals," is a factor, among others, to consider. 28 C.F.R. 524.72(f).

To the extent Plaintiff contends this regulation imposes a non-discretionary duty to safeguard its charges, Plaintiff's contention fails. In *Cohen*, which also involved the plaintiff's assertions regarding classification issues and an assault at the hands of another prisoner, the Eleventh Circuit noted that, "even if § 4042 imposes on the BOP a general duty of care to safeguard prisoners, the BOP retains sufficient discretion in the means it may use to fulfill that duty to trigger the discretionary function exception." 151 F.3d at 1342. In other words, "even though a statute or regulation imposes a general duty on a government agency, the discretionary function exception may still apply if the agency retains sufficient discretion in fulfilling that duty." *Id.* The Eleventh Circuit specifically rejected the argument that § 4042 sets forth "any required

nondiscretionary actions [ ]" and that this statute "imposes a non-discretionary duty of care on the BOP which removes this case from the discretionary function exception." *Id.* at 1343.

The Eleventh Circuit also considered 18 U.S.C. § 4081 in *Cohen*, which provides that: "the proper classification and segregation of Federal prisoners according to the nature of the offenses committed, the character and mental condition of the prisoners, and such other factors as should be considered in providing an individualized system of discipline, care, and treatment of the persons committed to such institutions." *Id.* (quoting 18 U.S.C. § 4081). The court determined this statute does not "mandate a specific, non-discretionary course of conduct in classifying prisoners[ ]," but this statute does "give the BOP ample room for judgment[.]" *Id.* The Eleventh Circuit also determined that the BOP's decision-making authority regarding how to classify prisoners is "part and parcel of the inherently policy-laden endeavor of maintaining order and preserving security within our nation's prisons." *Id.* at 1344 (citing *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)).

The undersigned agrees with the Eleventh Circuit's reasoning and finds § 524.72's language discretionary as it does not *mandate* separation

when an inmate has exhibited aggressive or intimidating behavior. Instead, CIM assignments involve an element of choice and judgment. Thus, the United States' decision not to classify Plaintiff and John Doe as separatees was a discretionary decision satisfying *Berkovitz*'s first prong. And Plaintiff presents no evidence establishing there was a separation order in place. *See Ashford*, 463 F. App'x at 384; *Parrott*, 536 F.3d at 638; *see also Robinson*, 245 F.3d at 1191. So, liberally construing the amended complaint, Plaintiff's claims of negligence against the United States for not placing a separatee order regarding John Doe, involved "an element of judgment or choice." *Miller v. SFF Hazelton*, No. 1:12CV98, 2015 WL 1021456, at *10 (N.D.W. Va. Mar. 9, 2015) (unpublished order) (quoting *Gaubert*, 499 U.S. at 322). "Federal courts have consistently held that because § 4042(a) does not mandate a specific, non-discretionary course of conduct, a plaintiff must either demonstrate that other mandatory directives were violated or that a BOP employee made a discretionary judgment not grounded in the policy of the regulatory regime in order to establish subject matter jurisdiction." *Id.* (citing *Calderon v. United States*, 123 F. 3d 947, 950 (7th Cir. 1997).

Under *Berkovitz*'s second prong, the undersigned finds that maintaining order and security in a prison is the type of policy-based decision that the discretionary function exception shields. *See Cohen*, 151 F.3d at 1344 ("Deciding how to classify prisoners and choosing the institution in which to place them are part and parcel of the inherently policy-laden endeavor of maintaining order and preserving security within our nation's prisons."); *Dykstra v. U.S. Bureau of Prisons*, 140 F.3d 791, 796 (8th Cir. 1998) ("Prison officials supervise inmates based upon security levels, available resources, classification of inmates, and other factors. These factors upon which prison officials based such decisions are inherently grounded in social, political, and economic policy. We have no difficulty in concluding that the discretionary function exception applies to the correctional officer's decision not to place Dykstra in protective custody or to take other protective action."); *Calderon*, 123 F. 3d at 951 ("It is clear that balancing the need to provide inmates security with the rights of the inmates to circulate and socialize within the prison involves considerations based on public policy.").

## IV. Conclusion.

Plaintiff bears the burden of proving that an equivocal waiver of sovereign immunity exists and demonstrating that the discretionary function exception does not apply. *LeRose v. United States*, 285 F. App'x 93, 96 (4th Cir. 2008). Plaintiff has failed to carry his burden to show by a preponderance of evidence that the United States classified him or failed to classify him in violation of any mandatory duty. *See also Robinson*, 245 F.3d at 1191. The undersigned finds that the BOP's decisions to not issue a CIM separatee order to keep Plaintiff away from John Doe, and to place him on a plane with Joe Doe, are the kind of conduct that the discretionary function exception protects. Plaintiff has failed to present any evidence contradicting that provided by the United States. *Id.* This court lacks subject-matter jurisdiction over Plaintiff's claims. The amended complaint should be dismissed with prejudice.

## V. Recommendation and notice of right to object.

The parties are advised of their right to object to this Report and Recommendation by March 13, 2017, under 28 U.S.C. 636 and Fed. R. Civ. P. 72. The parties are further advised that failure to make timely objection to this Report and Recommendation will waive their right to appellate review of

both factual and legal issues contained herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 27th day of February, 2017.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE